**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

JOHN NEWMAN,

                               **Plaintiff,**

   v.                                                     3:17-CV-808
                                                                 (TJM/DEP)

RICHARD HOYT AND SCOTT COOK,

                               **Defendants.**
_____

Thomas J. McAvoy,
Sr. U.S. District Judge

## DECISION & ORDER

Plaintiff John Newman brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. He alleges violations of his constitutional rights while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). See Amended Complaint dkt. #36 ("Amend. Compl."). Defendants have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court has determined to decide the matter without oral argument.

**I.     INTRODUCTION**

Plaintiff's Amended Complaint alleges that on January 12, 2017, DOCCS released Newman from incarceration into post-release supervision. Amend. Compl at Statement of Claim. Plaintiff had been incarcerated for violating the terms of an earlier release. Plaintiff alleges that Defendants Richard Hoyt and Scott Cook, who were parole officers, entered his residence without permission on February 13, 2017. Id.

Defendants gained access via a key obtained from Plaintiff's landlord. Id. Without Plaintiff's express consent or permission, Defendants entered the residence before knocking on Plaintiff's locked bedroom door. Id. Plaintiff opened the door for Hoyt and Cook immediately detained Plaintiff while Hoyt searched the apartment. Id. Defendants did not provide Plaintiff Miranda warnings before arresting him and taking him to jail. Id. Plaintiff was not arraigned, and he claims he did not receive "any other types of due process." Id. Plaintiff's Amended Complaint does not assign responsibility to any individual for the lack of the arraignment or deprivation of due process. Id. Plaintiff alleges that no judicial officer issued a warrant for the search of his apartment or his arrest. Id. Plaintiff's Amended Complaint also fails to assign responsibility for this failing.

Plaintiff had a preliminary hearing on February 23, 2017. The hearing officer found probable cause for a parole violation. Plaintiff was held by DOCCS until his final hearing on September 20, 2017 and he was represented by counsel. The Administrative Law Judge at the final hearing sustained seven parole violation charges against Plaintiff. Plaintiff was sentenced to incarceration for the remainder of his term of post-release supervision.

Plaintiff, while incarcerated, filed this civil complaint, *pro se*, against the Defendants. Plaintiff eventually filed an Amended Complaint which raises claims based on the conduct surrounding Plaintiff's arrest. He raises those claims pursuant to the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments.

Defendants now move for judgment on the pleadings and dismissal of that Amended Complaint. In the alternative, they argue that they are entitled to qualified

immunity.

## II. LEGAL STANDARD

When addressing a Rule 12(c) motion, the Court employs the same standard as for a Rule 12(b)(6) motion. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d. Cir 2001). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court must "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." Id.

## III. Discussion

### A. Fourth Amendment Claims

Defendants first seek dismissal of Plaintiff's Fourth Amendment Claims. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S.

3

CONST. amend. IV. Making all inferences in Plaintiff's favor, the Amended Complaint asserts that Defendants violated his Fourth Amendment rights when they entered his private residence, detained him, searched his bedroom without a warrant, and arrested him.

Determining whether Defendants violated Plaintiff's Fourth Amendment rights depends on the reasonableness of Defendants' conduct. "The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." United States v. Newton, 369 F.3d 659, at 664 (2d. Cir. 2004) (citing U.S. CONST. amend. IV; Kyllo v. United States, 533 U.S. 27, 33–34 (2001)). Because the Fourth Amendment forbids "unreasonable searches and seizures," the "touchstone in evaluating the permissibility of any search is reasonableness." United States v. Barner, 666 F.3d 79, 82-83 (2d Cir. 2012) (quoting United States v. Lifshitz, 369 F.3d 173, 178 (2d Cir.2004)); Griffin v. Wisconsin, 483 U.S. 868, 873, (1987)). "Reasonableness 'is determined by assessing, on the one hand, the degree to which a search intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Barner, 666 F.3d at 83 (quoting United States v. Knights, 534 U.S. 112, 118–19 (2001) (internal citations omitted). "[T]he law recognizes certain exceptions to th[e] rule" that reasonableness "requires a warrant and probable cause." Barner, 666 F.3d at 83 (quoting Newton, 369 F.3d at 665).

Special circumstances can limit a person's reasonable expectations of privacy. Barner 666 F.3d at 83-85; see also United States v. Knights, 534 U.S. 112, at 117. The probation and parole system offers one such set of circumstances. "A parolee's

4

reasonable expectations of privacy are less than those of ordinary citizens." Knights, 534 U.S. at 119–20, 122. "Indeed, the Supreme Court has found that 'parolees . . . have severely diminished expectations of privacy by virtue of their status alone.'" Barner, 666 F.3d at 84 (citing Samson v. California, 547 U.S. 843, 852 (2006)). "'Parole is meted out in addition to, not in lieu of, incarceration[,] . . . ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers.'" United States v. Grimes, 225 F.3d 254, at 258 (2d Cir. 2000) (quoting United States v. Cardona, 903 F.2d 60, 63 (1st Cir.1990)). Accordingly, "the Supreme Court has indicated that searches of probationers may be pursued without a warrant and under a standard lower than that of probable cause." Barner, 666 F.3d at 84 (quoting Lifshitz, 369 F.3d at 179). Furthermore, "allegation[s] [of a parole violation] and the resulting issuance of a warrant for retaking . . . operate to remove a parolee one step farther from the constitutional protection enjoyed by ordinary citizens." Barner, 666 F.3d at 84 (quoting United States v. Polito, 583 F.2d 48, 55 (2d Cir.1978)).

Parolees therefore have a significantly diminished expectation of privacy, in part because they know the conditions of their release include permission to search.[1] See Samson v. California, 547 U.S. 843, 849 (2006) (holding that the Fourth Amendment does not prevent police from conducting warrantless, suspicion-less searches of parolees). Further, courts "ha[ve] repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among

---

[1] Plaintiff insists that he is "a citizen subject to supervision" and not "a custodial releasee who is subject to '[p]arole' supervision." Amend. Compl. at Statement of Claim.

5

probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." Id. at 853 (internal citations omitted). New York law requires that a person on supervised release "comply faithfully with all conditions specified in writing at the time of his release and with all other conditions and instructions, whether oral or in writing, given him by the board, a member, an authorized representative of the board or a parole officer." N.Y. Comp. Codes R. & Regs. tit. 9 § 8003.1(b). This includes that "[a] releasee will permit his parole officer to visit him at his residence and/or place of employment and will permit the search and inspection of his person, residence and property." N.Y.Comp. Codes R. & Regs. tit. 9 § 8003.2(d); see Samson v. California, 547 U.S. 843, 847 (2006) (holding that "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment").

Plaintiff alleges that Defendants' search of his personal dwelling occurred without a warrant and without his consent. Plaintiff cites People v. Huntley, 43 N.Y.2d 175, 401 N.Y.S.2d 31 (1977), to argue that Defendants overstepped their boundaries and disrupted his personal life and affairs. He emphasizes that he did not consent to these actions. "[W]hat may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is." Id. at 181 (internal citations omitted). The Huntley court ultimately held that the intrusion into Huntley's life and residence was reasonable and permissible. Id. at 183. Further, "as we stated in Newton, 'neither Huntley nor Grimes holds that consent, whether obtained pursuant to parole regulation . . . or otherwise, is required in addition to a reasonable relationship

6

to the parole officer's duty to justify a warrantless parole search.'" Barner, 666 F.3d at 85 (2d Cir. 2012). "[T]he rule we approved in [] Grimes does not require a parolee's consent to permit parole officers to conduct a warrantless search reasonably related to their supervision responsibilities." Id. (quoting United States v. Newton, 369 F.3d 659, (2d. Cir. 2004)).

Plaintiff gave consent pursuant to regulation when he agreed to allow parole searches of his person and residence as a condition of his release under New York law. Defendants did not need Plaintiff's additional express consent for their search. See Barner, 666 F.3d at 85 (2d Cir. 2012). Parole officer duties bear a rational and reasonable basis to the State's interest "in reducing recidivism and thereby promoting reintegration and positive citizenship." Samson, 547 U.S. at 849; see also Barner, 666 F.3d at 85; Huntley, 43 N.Y.2d at 181. Plaintiff's Amended Complaint does not allege that the events of February 13, 2017, were unrelated to Defendants' duties, nor does the Amended Complaint allege that the search was irrational.

Plaintiff alleges that Defendants violated his Fourth Amendment rights by placing him in handcuffs immediately before executing the search. The momentary intrusion upon his freedom was not unreasonable, however, as officers conducting a search have a limited "authority to detain the occupants of the premises while a proper search is conducted." Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981).[2] This authority includes using "reasonable force"

---

[2]Summers and Muehler both involve the execution of a search warrant. Here, the search is permissible under the conditions of Plaintiff's post-release supervision under N.Y.Comp. Codes R. & Regs. tit. 9 § 8003.2(d).

7

to achieve the detention. See Graham v. Connor, 490 U.S. 386, 396 ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); Muehler, 544 U.S. at 94. Plaintiff does not allege that Defendants used any force while he was detained. Officers have the authority to detain individuals while searching to (1) prevent the flight of the individual if incriminating evidence is found, (2) minimize the risk of harm to the officers, and (3) facilitate orderly completion of the search. Muehler, 544 U.S. at 98 (citing Summers, 452 U.S. at 702-03). "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler, 544 U.S. at 98. Defendants could detain Plaintiff for a reasonable time to prevent flight, minimize harm, and facilitate an orderly search. They placed Plaintiff in handcuffs for a brief period. Plaintiff does not allege that this detention used unnecessary force or was of unreasonable duration. Plaintiff therefore fails to state a Fourth Amendment claim.

Plaintiff also contends that the officers violated his rights by entering his private residence without permission in order to gain access to his personal room. According to Plaintiff, Defendants obtained this key from Plaintiff's landlord, the owner of the building. Plaintiff describes his living arrangement differently at different points in his Amended Complaint and response to Defendants' motion, but the type of home in which he resides is immaterial to the analysis. By the express conditions of his post-release supervision, Plaintiff gave consent for his home to be searched. N.Y.Comp. Codes R. & Regs. tit. 9 § 8003.2(d). Plaintiff admits he was present for the search,

8

answered the knock on his bedroom door, and opened it for the Officers to enter. Had Plaintiff refused the search, he would have been in violation of the conditions of his release. Plaintiff makes no allegation that Defendants searched the area in which Defendants entered before alerting Plaintiff of their intent to search, or that they took any evidence from it.

Due to the conditions of his post-release supervision, Plaintiff had a diminished expectation of privacy. Plaintiff knew that he had, by accepting the conditions of his release, consented to parole searches of his person and home. The consent given, in combination with Defendants' duty to prevent recidivism and assist the parole, demonstrates that the search was reasonable. Plaintiff fails to state a Fourth Amendment claim for which he could recover and those claims will be dismissed.

### B. Fifth Amendment Claims

Defendants next seek dismissal of any Fifth Amendment claims. Plaintiff alleges Defendants violated his rights by failing to read Miranda warnings before detaining him, taking statements, searching his apartment, and arresting him. Plaintiff contends that when Defendants entered his bedroom they immediately placed him in mechanical restraints. "No person shall be . . . compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. "[T]he safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, at 440 (1984) (quoting California v.Beheler, 463 U.S. 1121, at 1125 (1983) (per curiam)). The Second Circuit has held that "[b]ecause Miranda 's safeguards 'become applicable as soon as a

9

suspect's freedom of action is curtailed to a degree associated with formal arrest,' . . . , we must conclude that handcuffing . . . , though reasonable to the officers' investigatory purpose under the Fourth Amendment, nevertheless placed him in custody for purposes of Miranda." United States v. Newton, 369 F.3d 659, 677 (2d. Cir. 2004) (internal citation omitted).

Plaintiff alleges Defendants immediately placed him into mechanical restraints upon opening the door for Defendants. The mechanical restraints significantly impaired Plaintiff's freedom to leave or refuse Defendants' orders. Subjectively, Plaintiff appears to view the application of mechanical restraints as comparable to an arrest. Plaintiff alleges that "I was immediately arrested . . . by being placed into mechanical restraints." Amend. Compl. at Statement of Claim. The Court finds that Plaintiff was in custody for Miranda purposes.

However, the Second Circuit has recognized that, "the Miranda warnings are prophylactic only; they are not constitutional rights in themselves. The reading of (or failure to read) Miranda warnings only has a presumptive effect on whether or not an individual's Fifth Amendment rights may have been violated." Weaver v. Brenner, 40 F.3d 527, 534 (2d Cir.1994). "[T]he failure of an officer to read an individual his Miranda rights could not be the grounds for a civil action under 42 U.S.C. § 1983." United States v. Gilkeson, 431 F.Supp.2d 270, 287 (N.D.N.Y. 2006) (citing the plurality in Chavez v. Martinez, 538 U.S. 760, 772 (2003)); see also Heyliger v. City of Binghamton Police Department, No. 311CV1293NAMDEP, 2016 WL 1048999, at *5, (N.D.N.Y. Mar. 11, 2016) ("[P]laintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings[.]") (citing Deshawn E. by

10

Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998)).

Plaintiff alleges that he never received Miranda warnings during the events of February 23, 2017. Plaintiff, when placed in the mechanical restraints, was in custody for the purposes of Miranda. Plaintiff was owed Miranda warnings, and Defendants erred if they failed to provide them. At the same time, the missing Miranda warnings alone are not enough to state a Fifth Amendment claim. Plaintiff may have another claim, however.

A Fifth Amendment violation could lie if Defendants coerced Plaintiff to obtain a waiver of his right against self-incrimination, or to elicit inculpatory statements, and the coerced statements were used against him in criminal proceedings. See Heyliger, 2016 WL 1048999, at *5, (citing Deshawn E. 156 F.3d at 346); see also Higazy v. Templeton, 505 F.3d 161, 171 (2d Cir. 2007); Chavez v. Martinez, 538 U.S. 760, 767 (2003) (finding by the plurality that compulsory questioning without criminal proceedings does not violate the Constitution). A high bar exists for such a claim, however, as the coercive conduct must "so shock[] the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." Moran v. Burbine, 475 U.S. 412, at 433 (1986).

Plaintiff's Amended Complaint does not allege any statements he may have made, or allege such statements were used against him during the hearings. In his answer, Plaintiff argues that "parolees still have a right to Miranda for criminal proceedings. Where [p]arole [r]evocation [t]ranscripts may be used as evidence. All citizens have the [r]ight to be free from being a witness against him/herself." Still, Plaintiff never claims that statements he made were coerced, nor used against him

11

unfairly, despite showing some understanding of the rights Miranda warnings protect. In fact, Plaintiff agreed to the condition of release that he would "reply promptly, fully and truthfully to any inquiry of or communication by his parole officer or other representative of the Division of Parole." N.Y.Comp. Codes R. & Regs. tit. 9 § 8003.2(e). Plaintiff was required to answer questions from Defendants honestly. Further, Plaintiff does not allege coercion was used to obtain statements, nor the use of those statements against him.

The missing Miranda warnings alone do not provide a basis for a § 1983 claim. In the Amended Complaint, no other claim exists for which Plaintiff could recover and Plaintiff does not allege any additional circumstances that would give rise to such a claim. Plaintiff's Fifth Amendment claims will be dismissed as well.

### C. Eighth Amendment Claims

Defendants also seek dismissal of Plaintiff's Eighth Amendment claims. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Amended Complaint contains little to no information about who violated Plaintiff's Eighth Amendment rights or how the violation occurred. Plaintiff does not allege any bail, fines, or conditions of imprisonment in the Amended Complaint.

The conduct of Defendants towards Plaintiff on February 13, 2017, does not implicate the Eighth Amendment. "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977). Plaintiff had not yet been adjudicated guilty at the time

relevant to the Second Amended Complaint. "Where the State seeks to impose punishment [before a finding of guilty], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Id. The Plaintiff was on supervised release when the violations alleged in the complaint occurred, not incarcerated or institutionalized. "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." Bell v. Wolfish, 441 U.S. 520, 535 n. 16. (1979) (Citing Ingraham, 430 U.S. at 671 n. 40).

> A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest. [ . . . ] Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

Wolfish, 441 U.S. at 536-537 (internal citations omitted).

The incidents that are the subject of the Amended Complaint occurred at a time when Plaintiff had not yet been sentenced. Plaintiff's Eighth Amendment claims will be dismissed.

### D. Ninth Amendment Claims

Defendants also seek to dismiss Plaintiff's Ninth Amendment claims. "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. VIII. Plaintiff asserts that Defendants violated his Ninth Amendment rights. Plaintiff offers no factual allegations concerning this alleged violation. "To state a claim under § 1983, a plaintiff

13

must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The Ninth Amendment does not provide 'an independent source of individual rights; rather, it provides a 'rule of construction' that we apply in certain cases.'" Barnett v. Carberry, 420 Fed. Appx. 67, 69 (2d Cir. 2011) (citing Jenkins v. C.I.R., 483 F.3d 90, 92, 99 (2d Cir. 2007)). The Ninth Amendment cannot be a basis for a § 1983 claim because it does not guarantee Plaintiff any specific rights. See Lloyd v. Lee, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008).

Plaintiff concedes he cannot raise a Ninth Amendment claim. The Defendants' motion will be granted in this respect.

### E. Fourteenth Amendment Claims

Defendants also seek to dismiss Plaintiff's claims that he was denied "arraignment, or any other [t]ypes of [d]ue process" in violation of the Fourteenth Amendment. Plaintiff's Amended Complaint only contains the above statement, without further contextual or factual information to understand how his Fourteenth Amendment rights to due process were violated.

"No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Supreme Court has held that "the constitutional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards." Moody v. Daggett, 429 U.S. 78, 85-86 (1976)

14

(citing Morrissey v. Brewer, 408 U.S. 471 (1972)).  These safeguards of due process include "the right to a hearing at which the court determines two issues: whether the [parolee] violated a condition of [parole] as a matter of fact and, if so, whether this fact warrants revocation."  United States v. Jetter, 577 Fed. Appx. 5, 7 (2d Cir. 2014) (citing United States v. Sanchez, 225 F.3d 172, 175 (2d Cir. 2000)).  "Due process requires that a person accused of violating the conditions of his supervised release receive a revocation hearing 'within a reasonable time after [the person] is taken into custody.'" Jetter, 577 Fed. Appx. at 7 (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)).

The Supreme Court has outlined the basic requirements of this hearing: (1) "some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available."; (2) that the determination of revocation of parole be made by someone "not directly involved in the case."; and (3) that the parolee is given notice that the hearing will occur, with its purpose being "to determine whether there is probable cause to believe he has committed a parole violation."  Morrissey, 408 U.S. at 485-87.  In New York, unless a parolee (or individual under post-release supervision) is convicted of a new crime, a hearing for revocation of parole should generally occur within fifteen days of the parole warrant.  See Exec. Law § 259-i(3)(c)(i).  The alleged violator should be notified in writing within three days of the execution of the warrant. See Exec. Law § 259-i(3)(c)(iii).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of

15

Brookfield, 950 F.2d 880, 885 (2d Cir.1991)). Plaintiff alleges that "after a search of my residence, I was then taken directly to [j]ail without arraignment, or any other types of due process." In his response, Plaintiff acknowledges receiving a preliminary hearing, and taking advantage of his ability to cross-examine his accuser. Plaintiff's Amended Complaint and response only address the lack of arraignment,[3] however, and make no other claims about lack of process related to the written notice, preliminary hearing, or revocation hearing. The Amended Complaint fails to connect Defendants to this alleged lack of due process. Assuming that Plaintiff was not arraigned or processed as required, Plaintiff fails to show that either Defendant was involved in this deprivation. As established above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual allegations within Plaintiff's complaint do not plausibly establish that Defendants were directly involved in the claimed due process violations. Plaintiff makes no other factual allegations to address the claim of a Fourteenth Amendment violation and those claims will also be dismissed.

**F. Qualified Immunity**

In the alternative, defendants Hoyt and Cook also assert they are entitled to qualified immunity. Plaintiff fails to state a claim upon which recovery may be granted under § 1983, and accordingly, the Court declines to address the issue of qualified immunity.

**V. CONCLUSION**

---

[3]Plaintiff's Response at ¶¶13 - 15 addresses what Plaintiff sees as due process violations, but they simply mirror his Fourth Amendment violation allegations.

For the reasons stated above the Court will grant the Defendants' motion to dismiss, dkt. # 26. Because the Court finds that Plaintiff could not allege facts which would give him a right to relief, and because he has filed an Amended Complaint, the motion will be granted with prejudice.

**IT IS SO ORDERED**.

**DATED:** August 6, 2018

Thomas J. McAvoy
Senior, U.S. District Judge